**ATTORNEY GENERAL OF TEXAS, Appellant,**

v.

**Joe Ebony DUNCAN, Appellee.**

**No. 2–95–237–CV.**

Court of Appeals of Texas, Fort Worth.

Aug. 29, 1996.

---

Dan Morales, Attorney General, Rhonda Amkraut Pressley, Assistant Attorney General, Jorge Vega, First Assistant Attorney General, Charles G. Childress, Director, Child Support Division, Austin, for appellant.

Mark J. Rosenfield, Mike Windsor, Loe, Warren, Rosenfield, Kaitcer & Hibbs, Fort Worth, for appellee.

Before CAYCE, C.J., and DAY and LIVINGSTON, JJ.

## OPINION

LIVINGSTON, Justice.

The Attorney General of Texas brought suit against Joe Ebony Duncan to establish his paternity of E.M., who is now fifteen years old. Duncan filed a motion for summary judgment, claiming that: 1) the Attorney General had failed to rebut the presumption that the man to whom E.M.'s mother was married at E.M.'s birth was E.M.'s father; 2) the Attorney General could not challenge paternity when neither E.M.'s mother nor the presumed father had done so within a two- or four-year statute of limitations; 3) the doctrine of res judicata barred the paternity suit; 4) laches barred suing for retroactive child support and pre- and post-natal expenses. The trial court granted summary judgment on all the grounds. We reverse and remand.

## FACTS

Barbara McCauley and Robert McCauley married in August 1975, separated in January 1976, and divorced in January 1983. They had one child together, C.M., who was born in January 1976. Barbara also gave birth to another daughter, E.M., in February 1981. When the parties divorced in January 1983, Barbara and Robert had lived apart without cohabitation for more than three years. Barbara claimed not to have seen Robert since 1978. Paternity testing conducted in 1993 confirmed that Robert was not E.M.'s biological father.

The Attorney General brought suit in 1991 to establish that Joe Ebony Duncan was E.M.'s father and to recover retroactive child support and health care expenses. Duncan filed a motion for summary judgment, which the family law special master approved. The Attorney General appealed the master's recommendation, and the trial court set a hearing for August 3, 1995. The trial court granted Duncan's motion for summary judgment without a hearing on July 24, 1995.[1] The Attorney General appeals that order in two points of error.

[1.] The Attorney General does not assign error to

## SUMMARY JUDGMENT

■■■ In its first point of error, the Attorney General contends that the trial court erred in granting Duncan's motion for summary judgment. In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Great Am.,* 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

■■■ In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47.

### Presumption of Paternity

In the first ground of his motion for summary judgment, Duncan claimed that the Attorney General had failed to rebut the presumption that Robert is E.M.'s father.

the procedural history of this case.

Former section 12.02 of the Family Code[2] provides:

> (a) A man is presumed to be the biological father of a child if:
>
> (1) he and the child's biological mother are or have been married to each other and the child is born during the marriage. . . .

TEX. FAM. CODE ANN. § 12.02(a) (now § 151.002(a)(1) (Vernon 1996)). Robert is presumed to be E.M.'s father because she was born during his marriage to her biological mother, Barbara. Presumption of paternity can be rebutted by clear and convincing evidence. *Id.* § (b) (now § 151.002(b)). *See Espiricueta v. Vargas,* 820 S.W.2d 17, 19 (Tex.App.—Austin 1991, writ denied) (prior decree establishing paternity may be clear and convincing evidence); *In re S.C.V.,* 750 S.W.2d 762, 764 (Tex.1988) (blood test excluding alleged father is clear and convincing evidence). If the summary judgment evidence fails to provide clear and convincing proof that would rebut the presumption of Robert's parentage, Duncan is entitled to summary judgment as a matter of law on this ground. *Cf. Sanders v. Davila,* 593 S.W.2d 127, 129 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.) (stating that absent contrary evidence, a true presumption invokes a rule of law that compels a jury to reach a conclusion).

■ Duncan's summary judgment evidence consists of Robert and Barbara's divorce decree, Barbara's First Amended Petition for Divorce, and Robert's Original Answer.[3] The divorce decree states that the material allegations in Barbara's petition for divorce "have been proved by full and satisfactory evidence." And one such allegation in Barbara's petition is that she and Robert separated and ceased to live together as husband and wife in 1976, five years before E.M.'s birth in 1981. Further, the two-page divorce decree recites that C.M. and E.M. were born *to Barbara* during the marriage, but does not state that C.M. and E.M. were born *to Barbara and Robert* or *"of the marriage."* Instead, the trial court names Robert possessory conservator of C.M. only, finding that such an order is "just and right, having due regard for the rights of each party and *the child of the marriage."* There is simply no determination by the trial court that E.M. was the child of Barbara and Robert.

Although pleadings in and of themselves do not constitute summary judgment evidence, the trial court may consider the pleadings and affidavits on file at the time of the hearing. *See* TEX. R. CIV. P. 166a(c). A statement of the evidence from Robert and Barbara's divorce was on file with and signed by the court. That statement, dated January 25, 1983, says Barbara and Robert had "lived apart without cohabitation for more than the past three years." E.M. was born on February 19, 1981. Also, an affidavit filed by Barbara in October 1982 states that she had not seen Robert since 1978.[4] *See Schafer v. Federal Serv. Corp.,* 875 S.W.2d 455, 457 (Tex.App.—Houston [1st Dist.] 1994, no writ) (in granting summary judgment, court is free to consider items in the case file). Simple mathematics from these dates show that it is impossible that Robert fathered E.M.

■ Rule 166a(c) does not require that pleadings and affidavits on file with the court

---

**2.** The Family Code was extensively reorganized and recodified by the Texas Legislature in 1995. *See* Act of April 20, 1995, 74th Leg., R.S., ch. 20, 1995 Tex. Gen. Laws 113. All references to the Family Code will be to the old version of the Code, with parenthetical references to the corresponding current version.

**3.** The Attorney General's response to the motion for summary judgment and its evidence, the results of a paternity test that prove Robert is not E.M.'s biological father, were filed after the trial court granted summary judgment to Duncan. Thus, we cannot consider the paternity test results to be summary judgment evidence.

The Attorney General points out that the affidavit containing the paternity test results was attached to a motion for paternity testing of Duncan, which was filed before the trial court granted summary judgment. But affidavits that are attached to pleadings do not constitute summary judgment evidence. *Sugarland Business Ctr. v. Norman,* 624 S.W.2d 639, 642 (Tex. App.—Houston [14th Dist.] 1981, no writ).

**4.** Both the statement of evidence and Barbara's affidavit were filed in her divorce action, cause number 231–40650–82. The paternity suit against Duncan was also a part of cause number 231–40650–82.

be referenced in the motion for summary judgment or response to be considered by the trial court. Rather, the trial court may take judicial notice of its file at any stage of proceedings and is presumed to have done so with or without a request from a party. *Lacy v. First Nat'l Bank of Livingston,* 809 S.W.2d 362, 367 (Tex.App.—Beaumont 1991, no writ). Viewing this evidence and its reasonable inferences in the light most favorable to the nonmovant, *Great Am.,* 391 S.W.2d at 47, we find that the summary judgment evidence submitted with the motion and the evidence on file with the court from the divorce proceeding raises clear and convincing evidence that rebuts the presumption of Robert's paternity of E.M. The trial court erred in granting summary judgment in favor of Duncan on the ground that the presumption had not been rebutted, thus creating a fact issue that precludes summary judgment.

### Limitations, Waiver, and Estoppel

In the second ground of his motion for summary judgment, Duncan claimed that this paternity suit is barred because neither Barbara nor Robert rebutted the presumption that Robert is E.M.'s father within a two-year or four-year statute of limitations.[5] He claims that the failure to rebut presumed paternity during that time constituted a waiver of the right to do so and estops either party from rebutting the presumption now.

■ "The movant for summary judgment on the basis of the running of the statute of limitations assumes the burden of showing as a matter of law that the suit is barred by limitations." *Rogers v. Ricane Enter.,* 772 S.W.2d 76, 80–81 (Tex.1989). Although Duncan claimed in his motion for summary judgment that either a two-year statute of limitations under section 16.003 or a four-year statute of limitations under section 16.004 of the Texas Civil Practice and Remedies Code applies to this case, he has not briefed this contention on appeal. In any event, these statutes are inapplicable. The appropriate statute of limitations for a paternity suit is

former section 13.01(a) of the Family Code, which states:

(a) A suit to establish paternity ... must be brought on or before the second anniversary of the day the child becomes an adult, or the suit is barred.

TEX. FAM. CODE ANN. § 13.01(a) (now § 160.001(a) (Vernon 1996)).

■ Because E.M. is only fifteen years old, the statute of limitations for this paternity suit has not yet run. The parties were not required to challenge paternity within a two- or four-year period of E.M.'s birth. Accordingly, Duncan's waiver and estoppel claims fail. Therefore, we hold that the trial court erred in granting summary judgment to Duncan on the ground that Robert and Barbara waived the right to file suit and are estopped from filing suit because the statute of limitations had run.

### Res Judicata

In the third ground of his motion for summary judgment, Duncan claims that the affirmative defense of res judicata bars a paternity suit against him. He directs our attention to Robert and Barbara's divorce decree, which states in part: "The Court, having considered the circumstances of the parents and the children, finds that the following orders are in the best interest of the children." Duncan claims that this language adjudicated Robert's paternity of E.M. In support of his argument, Duncan cites *Dreyer v. Greene,* 871 S.W.2d 697 (Tex.1993) and *In re A.L.J.,* 929 S.W.2d 467 (Tex.App.— Tyler 1996, n.w.h.). In both cases, the court barred a paternity suit on res judicata grounds. However, both cases are distinguishable.

In *Dreyer,* the mother alleged under oath that she and her husband were the parents of three children "of this marriage." *Dreyer,* 871 S.W.2d at 697. The trial court appointed the husband as possessory conservator for all three children and ordered him to pay child support. The mother later attempted to establish that another man fathered two of the

---

5. Duncan has never argued when a two- or four-year statute of limitations would begin to run,

*i.e.,* from E.M.'s birth.

three children. *Id.* at 697–98. The court held that the trial court's finding in the divorce decree that the children were "of the marriage" was an adjudication of the children's parentage. *Id.* at 698. But the divorce decree at issue in this case states, "the following [two] children were born to *Petitioner* during the marriage." Further, after addressing possession, visitation, and support[6] for only C.M., the court delineates that it made such determinations with "due regard for the rights of each party and *the child of the marriage.*"

In *A.L.J.*, the divorce decree stated that the mother and presumed father were "the parents of A.L.J." *A.L.J.*, 929 S.W.2d at 469. Also, the trial court ordered that the "parent-child relationship between [the presumed father] and A.L.J. be terminated." *Id.* There is no such express determination in Robert and Barbara's divorce decree. To the contrary, the decree is silent about who would be possessory conservator of and pay child support for E.M.

▮ We find that Duncan failed to prove as a matter of law that Robert and Barbara's divorce decree adjudicated Robert's paternity of E.M. No language in the decree states that Robert was the parent of E.M., establishes visitation or support for E.M., severs a parent-child relationship, or states that *children* "were born to the marriage." The issue of E.M.'s parentage has simply not been litigated. *See Attorney General of Texas v. Lavan*, 833 S.W.2d 952, 955 (Tex.1992). Accordingly, the trial court erred as a matter of law in granting summary judgment based on the defense of res judicata.

### Laches

▮ In the last ground in his motion for summary judgment, Duncan argues that the Attorney General's claim for retroactive child support and pre- and post-natal expenses is barred by laches. However, laches is not a defense available against the Attorney General in a paternity suit. *Reyna v. Attorney General of Texas*, 863 S.W.2d 558, 559 (Tex. App.—Fort Worth 1993, no writ). It was

error to grant summary judgment on this basis.

Having determined that the trial court erred in granting summary judgment on each ground of Duncan's motion for summary judgment, we remand for further proceedings.

### JURISDICTION

The only remaining question we must address is to which court we must reverse and remand this cause. In its second point of error, the Attorney General claims that the trial court erred in transferring the case to a court that lacks jurisdiction. The trial judge of the 231st District Court, who granted Duncan's motion for summary judgment, is a former shareholder in the law firm that represents Duncan. Because of this, the Attorney General filed a motion to recuse and Duncan filed a motion to transfer. The cause was transferred to the 322nd District Court of Tarrant County, which Duncan and the Attorney General approved.

▮ Former section 11.05 of the Family Code states:

(a) ... [W]hen a court acquires jurisdiction of a suit affecting the parent-child relationship, that court retains continuing, exclusive jurisdiction of all parties and matters provided for under this subtitle in connection with the child. No other court of this state has jurisdiction of a suit affecting the parent-child relationship with regard to that child except on transfer as provided in Sections 11.06, 11.061, or 17.06 of this code.

TEX. FAM. CODE ANN. § 11.05(a) (now § 155.002 (Vernon 1996)). The 231st became a court of continuing, exclusive jurisdiction in 1983 when the divorce decree named Barbara E.M.'s managing conservator. Duncan's motion to transfer did not assert grounds under sections 11.06, 11.061, or 17.06 for which the 231st District Court could transfer the case. Because the transfer was not made for permissible reasons, the 231st

---

**6.** The decree stated that a visitation schedule an an amount of child support would be set after

Robert was located.

did not have authority to transfer this case to the 322nd. *Alexander v. Russell*, 699 S.W.2d 209, 210 (Tex.1985). As *Alexander* points out, if the trial judge of the 231st wishes to recuse, the proper procedure is to have another judge preside in his place in the 231st. *Id.*

We reverse the summary judgment and remand to the 231st District Court for further proceedings.