

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00317-CV

IN THE GUARDIANSHIP OF JEFFREY
HERRON, AN INCAPACITATED
PERSON

----------

FROM PROBATE COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 2012-GD00235-2

## MEMORANDUM OPINION[1] ON REHEARING

-----------

## I. Introduction

After reviewing appellant Amy Herron's motion for rehearing, we deny the motion. We withdraw our opinion of June 26, 2014, and substitute the following in its place.

---

[1]*See* Tex. R. App. P. 47.4.

In two issues, Appellant Amy Herron appeals the trial court's order finding her liable for damage to Appellee Jeffrey Herron's estate while she was serving as his guardian. We affirm.

## II. Factual and Procedural Background

This case arises out of an accident that left Jeffrey, Amy's husband, incapacitated. Amy was appointed as guardian of Jeffrey's person and estate by the Parker County Court on November 4, 2010, and posted a $50,000 surety bond. On June 4, 2012, the Parker County Court issued a show-cause order regarding Amy's failure to demonstrate the capability of properly performing her duties as guardian, but Amy moved to transfer the case to Tarrant County before the Parker County Court could rule. The case was transferred to Tarrant County Probate Court No. 2 on July 16, 2012, and the probate court appointed Thomas Henry to serve as Jeffrey's guardian ad litem.

Henry's preliminary report cited numerous problems regarding Amy's actions as guardian. He noted that there was no record of Amy's having filed an oath, that the estate's inventory was not timely filed, that the inventory and annual accounting Amy eventually filed were deficient, that no investment plan was filed, that no application for allowance was filed, that no application for authority to pay the expenses reflected in the annual accounting or to pay the fees of Amy's counsel was filed, and that there was no indication that notice was given to the estate's creditors or that their claims had been handled. *See generally* Act of May 30, 1993, 73rd Leg., R.S., ch. 957, § 1, 1993 Tex. Gen.

2

Laws 4081, 4107, 4113, 4115–17, 4126–27, 4129, 4145–46 (adding former probate code sections 700, 729, 741, 742, 774, 776, 784, and 855), *repealed by* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, § 3.02(a), 2011 Tex. Sess. Law Serv. 1901, 2094 (West 2011).[2]

At an August 10, 2012 conference, the probate court permitted Amy to resign as guardian of the estate instead of being removed. Amy then filed her final accounting, which the probate court rejected due to the numerous deficiencies highlighted by Robert Loudermilk, the probate court's guardianship auditor. The deficiencies noted by Loudermilk include, among other things, that the opening figures did not match the inventory, appraisement, and list of claims originally approved by the Parker County Court; that no monthly allowance was ever established; that the disbursements section listed a "?" for the taxes; that the exhibits attached to the accounting indicated that funds were spent on the family and not solely on Jeffrey; that no verification of funds was provided; that the affidavit at the end of the accounting was incomplete; and that the account did not balance. *See id.*

On July 9, 2013, a hearing was held regarding approval of a settlement agreement for the personal injury suit arising from Jeffrey's accident. Although

---

[2]The repeal of the Texas Probate Code and transfer of its provisions to the Texas Estates and Guardianship Code was intended as a recodification only, and no substantive change in the law was intended by the legislature. *See* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, § 4.01, 2011 Tex. Sess. Law Serv. 1901, 2095 (West 2011).

3

the record of that hearing does not show any discussion of Amy's liability for the deficiencies of the estate, the probate court issued an order that day finding that Amy and her surety were liable to the estate for the $50,000 bond amount. In its order, the probate court stated that it had reviewed and taken judicial notice of the contents of its file and that it had "previously expressed, on multiple occasions, its concern about the total failure of documents filed by [Amy] and/or her counsel of record to comply with the requirements of the Texas Probate Code, and the losses and damages caused to [Jeffrey] and his estate by the same." The probate court also stated that it based its order on having reviewed the numerous defective documents filed by or on behalf of Amy, the objections filed to the same by Henry, and additional defective documents filed on behalf of Amy thereafter. Accordingly, having found that Amy had caused loss or damage to Jeffrey and his estate of at least $50,000 and in order to prevent further damage, the probate court ordered that Amy and her surety were liable for the full bond amount.[3] This appeal followed.

---

[3]In its findings of fact entered after the order, the probate court again stated that it had taken judicial notice of the entire contents of its file, recited the eleven deficiencies in Amy's performance as guardian of Jeffrey's estate, and noted that the only realistic prospect for recovery against Amy was on the bond because she was destitute and any deficiency assessed against her would ultimately be unrecoverable and cause further injury to Jeffrey through the accumulation of additional attorney's fees.

4

### III. Analysis

In her first issue, Amy argues that she was denied due process when the court sua sponte signed the order finding her liable for the deficiency without providing her notice or holding a hearing.[4] Our resolution of this appeal is guided

---

[4]Jeffrey's guardian characterizes the probate court's order as a post-answer default judgment and argues that Amy failed to preserve her complaint because she did not file a motion for new trial.

On rehearing, Amy cites *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983), to support the same due process complaint she raised in her original appellate brief. However, *Cunningham* is distinguishable from the present case. In *Cunningham*, after a personal judgment was rendered against a former administrator for his actions during the pendency of his administration, he filed a motion for new trial and argued that the judgment was void because there were no pleadings seeking a judgment against him and no citation was issued to him personally. *Id.* at 812. The court held that the trial court erred by issuing the judgment when no pleadings had been filed requesting the judgment and the former administrator was given no notice or opportunity to explain or defend his actions before the judgment was rendered. *Id.* at 813–14. Here, however, after Amy was notified of the order against her, she did not file a motion for new trial. Instead, she raised her due process complaint for the first time on appeal. Even if we were to assume that the probate court abused its discretion by issuing the deficiency order, Amy has waived her complaint by failing to raise the issue in a motion for new trial or other post-judgment motion. *See* Tex. R. App. P. 33.1(a); *Anderson v. McCormick*, Nos. 01-12-00856-CV, 01-12-00857-CV, 2013 WL 5884931, at *3–4 (Tex. App.—Houston [1st Dist.] Oct. 31, 2013, no pet.) (mem. op.) (discussing preservation of due process complaint in guardianship proceeding); *see also In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003) (holding due process complaint was unpreserved when appellant failed to raise it during trial or in any post-judgment motion), *cert. denied*, 541 U.S. 1043 (2004).

by the probate code provisions that were in effect at the time that the order was signed.[5]

Under former probate code section 629, the judge of the court in which a guardianship is pending has wide latitude to address all matters related to the guardianship and the authority to issue all necessary orders. Act of May 30, 1993, 73rd Leg., R.S., ch. 957, § 1, sec. 629, 1993 Tex. Gen. Laws 4081, 4088, *repealed by* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, § 3.02(a), 2011 Tex. Sess. Law Serv. 1901, 2094 (West 2011). Additionally, former section 632(a) provides that "a person does not need to be cited or otherwise given notice in a guardianship matter except in situations in which this chapter expressly provides for citation or the giving of notice." Act of May 30, 1993, 73rd Leg., R.S., ch. 957, § 1, sec. 632(a), 1993 Tex. Gen. Laws 4081, 4089, *repealed by* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, § 3.02(a), 2011 Tex. Sess. Law Serv. 1901, 2094 (West 2011). None of the former probate code's provisions expressly provide for citation or the giving of notice when a guardian is held liable on the bond for deficiencies to the estate. Rather, former section 668 states that when a guardian neglects to perform his or her required duties, the guardian and the sureties on the guardian's bond are liable for the "additional costs incurred that

_____

[5]The probate court signed the order on July 9, 2013. The repeal of the former probate code provisions cited in this opinion became effective on January 1, 2014. *See* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, § 3.02(a), 2011 Tex. Sess. Law Serv. 1901, 2094–95 (West 2011) (to be codified at Texas Estates and Guardianship Code §§ 1051.001(a), 1053.101, 1055.102. 1155.152, 1203.002, 1203.202(c)).

are not authorized expenditures under this chapter" and for the "reasonable attorney's fees incurred in removing the guardian or in obtaining compliance regarding any statutory duty the guardian has neglected." Act of June 19, 1993, 73rd Leg., R.S., ch. 957, § 1, sec. 668, 1993 Tex. Gen. Laws 4081, 4097, *repealed by* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, § 3.02(a), 2011 Tex. Sess. Law Serv. 1901, 2094 (West 2011).

Accordingly, based on the provisions listed above, we conclude that the probate court was not required to serve Amy with citation or notice before entering its order. Furthermore, despite Amy's assertions that the deficiency was not brought to her attention before the order was entered, as set out above, the record reveals otherwise. In Henry's written objections to Amy's final accounting, which detailed the numerous ways in which Amy had neglected her duties as guardian and damaged the estate, he stated that the probate court "should and indeed must enter a Deficiency Judgment against Amy Herron and/or her Surety." Additionally, in an email dated January 31, 2013, Loudermilk informed Amy that her final accounting had not been approved because, among other things, the accounting indicated that funds were spent on the family and not solely on Jeffrey; no verification of funds was provided; the opening figures did not match those found on the inventory, appraisement, and list of claims initially approved by the Parker County court; and the account did not balance.[6]

_____

[6]Loudermilk further noted in his correspondence that if any funds "were the separate property of Mr. Herron and they were spent during the course of the

7

Although no formal citation or notice was required,[7] Henry's written objection and Loudermilk's correspondence was sufficient to provide Amy with notice of the deficiencies that had accrued during her time as guardian of the estate and that were subsequently reflected in the probate court's order and findings of fact and conclusions of law.

Also, under former probate code section 760(b), "the court may immediately accept a resignation and appoint a successor without citation or notice but may not discharge the person resigning . . . or release the person or the sureties on the person's bond until final order or judgment is rendered on the final account of the guardian."  Act of May 16, 2007, 80th Leg., R.S., ch. 614, § 14, sec. 760(b), 2007 Tex. Gen. Laws 1173, 1178, *repealed by* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, § 3.02(a), 2011 Tex. Sess. Law Serv. 1901, 2094 (West 2011).  Because no final account had been rendered and Amy had not been discharged, she remained a party to the ongoing guardianship proceeding

---

guardianship, those transactions need to be ratified."  He also noted that "[i]f the money spent on the family was Mr. Herron's separate property, those funds may need to be reimbursed to the guardianship estate."

[7]Amy attached an affidavit to her reply brief in this appeal, stating that an email between her attorney and Loudermilk showed no notice was given and no hearing was held.  However, because documents attached to appellate briefs are not considered part of the record, Amy's affidavit cannot be considered.  *See* Tex. R. App. P. 34.1; *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (stating that court cannot consider documents attached to appellate briefs and must consider case based solely upon the record filed).

at the time the probate court issued the deficiency order.[8]  Accordingly, based on the applicable provisions set out above and the fact that Amy had not been discharged at the time the order was entered, we overrule her first issue.

In her second issue, Amy argues that there is no evidence to support her liability for any deficiency to the estate.  However, as the probate court did here, a court may take judicial notice of its file at any stage of the proceedings.  *See Att'y Gen. v. Duncan*, 929 S.W.2d 567, 571 (Tex. App.—Fort Worth 1996, no writ).  Furthermore, former probate code section 628 states that "record books or individual case files, including records on a computer file . . . or certified copies or reproductions of records, shall be evidence in any court of this state."  Act of April 26, 1999, 76th Leg., R.S., ch. 67, § 2, sec. 628, 1999 Tex. Gen. Laws 424, 426, *repealed by* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, § 3.02(a), 2011 Tex. Sess. Law Serv. 1901, 2094 (West 2011).

Here, in its findings of fact and conclusions of law, which Amy does not challenge,[9] the probate court stated that the issues and concerns listed by Henry

---

[8]In support of her argument that a suit must be brought to find her liable for the deficiency, Amy cites former probate code section 763, which provides that a "successor guardian may bring suit on the bond or bonds of the predecessor . . . for all the estate that came into the hands of the predecessor and has not been accounted for by the predecessor."  *See* Act of May 30, 1993, 73rd Leg., R.S., ch. 957, § 1, sec. 763, 1993 Tex. Gen. Laws 4081, 4124, *repealed by* Act of May 19, 2011, 82nd Leg., R.S., ch. 823, § 3.02(a), 2011 Tex. Sess. Law Serv. 1901, 2094 (West 2011).  However, this provision is not applicable here because while Amy was allowed to resign, she had not been discharged, and the probate court retained the authority to find her liable on the bond for the estate's deficiency attributable to her tenure as guardian.  *See* Act of May 16, 2007, 80th Leg., R.S., ch. 614, § 14, sec. 760(b), 2007 Tex. Gen. Laws 1173, 1178 (repealed 2011).

9

in his preliminary report and objections to the final accounting were "verified by [the] Court from the contents of documents contained in the Court's file."  These included that Amy had commingled guardianship funds, that the annual accounting and exhibits demonstrated on their faces that most of the expenditures from the estate were not made for Jeffrey's benefit, that the filings of Amy and her attorneys did not comply with the probate code or the court's procedures, and that tens of thousands of dollars in attorney's fees and expenses were required for the guardian ad litem and successor guardian of the estate to review and object to the nonconforming documents and to rectify Amy's improper handling of the estate during her tenure.  In Henry's objections to the final accounting, he noted that Amy's final accounting showed on its face that she had expended over $93,632.48 of estate funds for which no court authority had been sought or obtained.[10]

Accordingly, we conclude that the record contains sufficient evidence to support the probate court's decision as to Amy's liability and the amount of the deficiency.  Therefore, we overrule Amy's second issue.

---

[9]When findings of fact are filed and are unchallenged, they occupy the same position and are entitled to the same weight as a jury's verdict; they are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding.  *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Inimitable Grp., L.P. v. Westwood Grp. Dev. II, Ltd.*, 264 S.W.3d 892, 902 & n.4 (Tex. App.—Fort Worth 2008, no pet.).

[10]Henry also stated that he believed that the amount consumed or expended without authority was actually significantly higher.

## IV. Conclusion

Having overruled both of Amy's issues, we affirm the probate court's judgment.[11]

/s/ Bob McCoy

BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON, C.J., GARDNER and MCCOY, JJ.

DELIVERED:  September 11, 2014

---

[11]Based on our resolution of this appeal, appellee's "Motion to Strike Portions of Appellant's Reply Brief" is moot.