**Concurring Opinion Filed November 2, 2020**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00649-CV

**B.C., Appellant**
**V.**
**STEAK N SHAKE OPERATIONS, INC., Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-02686-2012**

# CONCURRING OPINION ON DENIAL OF APPELLEE'S
# MOTION FOR RECONSIDERATION EN BANC

Opinion by Justice Schenck

Appellee's motion for reconsideration en banc faults the plaintiff below for her failure "to direct" the trial court's attention to the summary judgment evidence that establishes its error in rendering summary judgment. The motion also faults the panel justices for becoming "surrogate advocates" in considering the summary judgment record without being so invited by the briefs.

I fully agree with the Court's decision to deny the motion for en banc reconsideration in this matter. I write separately because it illustrates a continuing

and important misinterpretation of the roles of judges in the trial and appellate courts grounded in some earlier cases that should no longer be seen as controlling.

## Background

The panel's decision in this case represents the Court's third attempt to reach a final judgment in this matter and comes on the heels of two earlier reversals by the supreme court. The first decision involved a purely legal question of whether the Texas Commission on Human Rights Act makes a single, rather than episodic assault actionable. The second and now third decisions collectively conduct the actual review of the summary judgment entered on both "no evidence" and "traditional" grounds. Not that it controls our *de novo* review in this case,[1] but the order granting summary judgment recites that the judge considered "all of the evidence."

The motion raises recurring and important contentions about appellate review and the role of appellate judges in conducting it. That problem arises, by necessity, from the framing of the issues and the arguments in the trial court. Accordingly, I will start there.

---

[1] To be clear, in my opinion the recitation to that effect would not change either the record or the governing standards below or in this Court.

## I. Trial Judges Are Answerable for the Record and the Law Before Them

The motion notes that plaintiff's counsel below failed to "direct" the trial judge's attention to the evidence submitted by the defendant in connection with its motion for traditional summary judgment, though on an issue that was also subject to a "no evidence" attack. Unspoken but essential to appellee's argument is the notion that trial courts in Texas are under-staffed and presumably unable to study the moving papers (or presumably the governing law) before rendering a judgment. While our trial courts generally lack the trained legal assistance that many (this author included) might think are essential to acquit themselves of the substantial task before them, we all go to war with the army we have.

If we were to presume that trial courts were not reading or otherwise familiarizing themselves with the motion papers to render an informed decision, why would we stop there? Should we not also assume that the court was not familiar with the applicable law unless one side directly cited it or, better still, provided a copy of the relevant statute or opinion? Would we then constrain our analysis on appeal to those same authorities, regardless of the actual state of the law?[2] Our governing case law, dating back to *Malooly Brothers, Inc. v. Napier*, embraces the

---

[2] If we have arrived at the point where, for whatever reason, we would be required to discard the presumption that judges are able to read the papers and apply the law to the matter being heard, we would do better to say so directly and demand a functional remedy. As an equal, coordinate branch, we, and those we serve, are entitled to rely on the idea that we are deciding cases on their merits and according to the law and the facts before us. TEX. CONST. art. 1, §§ 2, 19.

opposite, and appropriate, assumption that the trial courts, however staffed and supported, are aware of the relevant issues and materials before them. 461 S.W.2d 119 (Tex. 1970).

The motion urges a different assumption and cites language in earlier panel decisions from this Court that support it. However, those opinions trace back to the earliest panel decision in this case that has since been reversed by the supreme court and remanded for this proceeding. I believe the supreme court's decisions in these cases should be treated as ending any argument that a party resisting a motion for summary judgment is obliged to "direct" the trial court to the summary judgment record. If one assumed that this language survived that vacatur, one would wonder how the error could have been deemed harmful by the supreme court or why remand would have been needed. *See* TEX. R. APP. P. 60.2(c), 60.3.

Even assuming the supreme court's decisions in this case did not have that effect and left the question open for future debate, I believe the rules themselves foreclose the argument appellee advances here, as I detail below.

**A. There Is Only One Summary Judgment and One Record Authorized By Rule 166a**

The motion presses the argument that summary judgment proceedings in the trial court should be parsed and reviewed separately depending on the subparagraph

of the summary judgment rule invoked.[3]   The record available to the trial and appellate court alike would thus be limited to the respective theories—"traditional" or "no evidence"—to which the movant directed the trial court's attention.  *Contra Attorney Gen. v. Duncan*, 929 S.W.2d 567, 571 (Tex. App.—Fort Worth 1996, no writ).  This argument appears to derive from the last sentence of rule 166a(i), authorizing "no evidence" motions, which directs that judgment must be rendered unless "the respondent [has] produce[d] . . . summary judgment evidence."  Reading the subparagraph in isolation, the fact that the summary judgment record *already* contains proof sufficient to defeat the motion would be of no moment, unless the respondent separately "produces" that evidence or copies and refiles it.  There are several problems with this argument.

### 1. *Evidence Need Not Be (Re)Produced By the Plaintiff to Be Counted*

The motion faults the panel for considering summary judgment evidence filed by the defendant with its motion for "traditional" summary judgment because the nonmovant did not "*direct*" the trial court's attention to it.  This argument (and the authority it invokes) necessarily implies that the plaintiff was required only to

---

[3] Issue development stems from our generous pleading standards and special exception practice.  A petition (or counterclaim) need not cite statutes or case law in support of a claim.  Instead, it should contain only "a short statement of the cause of action sufficient to give fair notice of the claim involved."  TEX. R. APP. P. 47(a).  Over recent decades, efforts to streamline and reduce the complications, delay and expense associated with litigation brought refinements to allow prompt dismissal of legally futile claims.  *E.g.*, TEX. R. CIV. P. 91a; *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998).  Still, we focus on the facts alleged (and inferences that might plausibly be credited) and the relevant law in evaluating the viability of a claim or defense.

highlight the relevant summary judgment materials before they might be considered. Why would that be? No language in rule 166a(i) would allow the mere "directing" to suffice in the face of text supposedly isolating our gaze to who "produced" it, if that no evidence proceeding stands on its own. To resist a "no evidence" motion on the same issue developed in the "traditional" motion, the plaintiff would be required to refile, and hence, "produce it," herself.

Putting that obvious textual problem aside, the argument also, and more directly, fails to acknowledge that the only—and singular—"proceeding" or "judgment" rule 166a authorizes are both found in rule 166a(c), which authorizes one summary judgment *by "issue" presented*, not by the subparagraph invoked or mechanism of summary judgment attack.[4]

### 2. *"Summary" Judgment Is Meant to be Just That, Summary—Not a Meandering Minefield of Empty Technicalities*

The introduction of subparagraph (i)—the "no-evidence" motion—to the existing summary judgment rule, allows the defendant, "after adequate time for discovery," to seek summary judgment on the lack of objective quality of the available proof. This burden-shifting refinement was made available, in addition to the traditional motion practice (by which the movant first establishes his or her entitlement as a matter of record), in order to streamline the process and reduce the

---

[4] If rule 166a(c) authorizes "proceedings" in relation to only a traditional summary judgment motion, what provision would authorize any proceedings under the ostensibly separate 166a(i) motion?

costs associated with defending against claims that could not support a judgment. Nothing in any of these rules or their past construction would suggest that litigants were meant, instead, to engage in a game of procedural Twister, whereby they are actually conducting separate proceedings and seeking separate judgments on the same issues, or that the goal of simplifying the proceedings and reducing costs was intended to operate to the benefit of only one side of the docket.

Instead, rule 166a(c), focuses a singular "proceeding" pointing directly to the "grounds" on which relief is sought, regardless of the mechanism invoked to seek it. It likewise directs *one* judgment to be rendered summarily and in conformity with the "*issues . . . expressly presented to the trial court*" whether by "*motion, answer or other response*," and without regard to which side presented it or how. Traditional and no evidence motions must, therefore, be targeted *to the issues* on which judgment is sought, and the proceeding (and record) is singular.[5] *Id.*

Subparagraph 166a(i) thus adds a procedural vehicle for testing the nonmovant's right to proceed to trial, but nothing in the rule or common sense would support the notion that there are two separate and distinct records or that the trial court might ignore in rendering a judgment to which the movant is not in fact

---

[5] Notably, the proceeding here is specifically defined as a hearing. In at least this context, a request that the trial judge take notice of its file should be unnecessary. *Compare Duncan*, 929 S.W.2d at 571 (rejecting that trial court must be asked to take notice of the file insofar as the materials pending within the motions papers that are the subject of the hearing), *with Blake v. Intco Invs.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.) (trial court is "not required" to search voluminous record to identify fact issue). As detailed below, neither the district court, nor this court is obliged to read the record. That is separate from the question of whether we *may* or what will happen if a higher court does.

entitled. If, as in this case, the summary judgment record, including the motion and attachments identified in the motion for traditional summary judgment, reflects that the movant is not entitled to judgment at all,[6] no language in the rule purports to direct its entry, regardless of which paragraph of the rule the movant intends to invoke.[7]

## B. Appellate Review of (Summary) Judgments

Our review in any case, and certainly of summary judgments, is also addressed to the "issues presented" by the parties below and on appeal. TEX. R. APP. P. 38.1(f). As a result, when both parties move for summary judgment, we review the entire record before the trial court, regardless of which party produced it, and examine the resulting judgment. *Merriam v. XTO Energy*, 407 S.W.3d 244, 248 (Tex. 2013). We then examine the "issue" *de novo* for the legal question it is and, where proper,

---

[6] If the motions and proceedings are in fact to be separately processed by the nonmovant and the trial court such that a rule 166a(i) motion is to be viewed in isolation from the balance of the record, I would ask what rule governs the proceedings.

[7] Of course, a trial court has the authority to manage its docket. Thus, where a response simply attaches voluminous materials with no evident connection to the response itself, the court may ask whether the response's assertion that a fact issue is "in there somewhere" was formed after "a reasonable inquiry that the [response] is not groundless." TEX. R. CIV. P. 13. The court might properly opt for a resubmission under such additional terms as are reasonable under the circumstances. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) ("The imposition of very severe sanctions is limited, not only by these standards, but by constitutional due process."). Of course, the trial court might simply also elect to proceed, accepting that it is entering judgment on its understanding of the record, leaving the movant to defend its claimed entitlement at the peril of potential reversal. From the trial court's perspective, the concern that a party might point more specifically to the record is little different from the concern that a party might make a different argument in a higher court. *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) (parties may pursue arguments not presented below so long as they relate to the issue presented below).

"render the judgment that the trial court should have rendered."  TEX. R. APP. P. 43.2(c).

### 1.  We Review a Single Judgment and a Single Record

When a single party seeks summary judgment on both "no evidence" and "traditional" grounds, we generally begin with the no evidence theory because that ground, if sustained, makes further review unnecessary. *Merriam*, 407 S.W.3d at 248.  Still, nothing in that sequencing would suggest that functionally distinct judgments, motions, or records are at work.  Summary judgment proceedings and appeals alike move issue by issue.  A party may move for no evidence relief on the alleged complete lack of proof pertaining to one element of a claim and traditional relief on a limitations bar to the same claim or counterclaim.  Or, a party might request traditional *and* no evidence relief on the same claim raising the same issue— that the quality of the evidence is objectively deficient with the movant first being forced to show the evidentiary deficiency and entitlement to summary judgment on only the traditional motion.  In that case, so long as the same claim is involved, we spare ourselves the step of determining whether the movant carried the initial burden on the traditional motion by simply examining the issue through the lens of the no evidence motion, as the nonmovant already carries the burden of establishing his entitlement to proceed to trial on the issue.

Of course, this begs the question of whether our review looks to the whole of the summary judgment record before the trial court as it relates, not to the

subparagraph of rule 166a invoked, but to the "issues . . . expressly presented to the trial court" and whether by "motion, answer or other response." TEX. R. CIV. P. 166a(c).

Appellee's first argument, of course, is that evidence relevant to an "issue" but submitted by the other party in connection with a traditional motion cannot be considered on appeal unless the nonmovant "directs it" to the trial court's attention. This theory, carried forward on appeal and endorsed as a limitation on review of the judgment, would spare us work and avoid reversal where the trial court was deprived of flag waving over the fact issue. The short answer is that the burden of reversal of the judgment will fall on the shoulders of the party who bore the burden of proving entitlement to it. The longer answer is that appellate courts, no less than trial courts, have the right, if not the obligation, to answer the "issue" before them on the basis of the record and the controlling law.

We have long been told that, unless the trial court has specifically limited the basis for its decision, our review of summary judgments is to assume the trial court considered all the issues and evidence available. *E.g.*, *Merriam*, 407 S.W.3d at 248 (citing *State v. Ninety Thousand Two Hundred Thirty–Five Dollars & No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013)). This default review standard would obviously sit awkwardly with the notion that we cannot (or should not) look at the record unless there is some specific indication the trial judge was looking at it. The fact that the trial court rendered summary judgment is surely an indication

that the trial judge thought *some* ground supported it. It is not, however, conclusive of the idea that *all* of them did.

### 2. Neither an Appellate Justice Nor a Trial Court Judge Becomes a "Surrogate Advocate" By Reading the Record or Applying the Governing Law to the Issues Raised by the Parties

Appellee faults the panel for looking to the record, in full, and without invitation from the plaintiff's (now appellant's) brief, abandoning its "neutrality" and taking on the role of "advocacy."[8] As a trial court reviews motions addressed to overlapping "issues," we review a single judgment. We also have a single record. The motion seizes on broad language in still other of this Court's cases to make a more problematic assertion—that we *cannot* look to the record or the law that governs the issues presented without forfeiting our neutrality. That misunderstands our role and confuses what we are "not required to do," on the one hand, with what we must not do, on the other. While it continues to be asserted in this motion and elsewhere, I believe that argument should have been laid to rest in *St. Johns Missionary Baptist Church v. Flakes*, 595 S.W.3d 211 (Tex. 2020).

Charges of judicial activism are more easily made than understood. No one would doubt that, on the one hand, with the exceptions of structural issues like subject matter jurisdiction, a judge reaching out to raise and decide an issue not

---

[8] One would presume that a like charge could be made to the trial judge who, uninvited, has the temerity to read the traditional summary judgment papers and identify the presence of a material and genuine fact issue that is also the subject of a no evidence attack.

raised by the parties, is exceeding his or her role. On the other hand, a judge resolving an issue raised by the party *and only in accordance* with the precise argument and legal authorities cited by the parties operates at grave risk, including creating new law unnecessarily and improperly. This case and its summary judgment posture illustrate the point perfectly.

## II.    What's the "Issue" on Summary Judgment?

Appellate courts in Texas and elsewhere have long distinguished between the legal arguments and authorities that drive the result and the issue or issues to which they pertain. In any appeal, that distinction can be difficult but is informed by the rules themselves, which direct us back to the motion in the trial court and the issues framed there. To put the question in context, are there *two* "issues" left in this (hopefully final) appeal: whether the defendant was entitled to "traditional" summary judgment because it carried the burden of showing a juror could not reasonably credit the available proof? And, separately, whether the plaintiff produced enough evidence in response to the no evidence motion? As noted above, the operative rule directs both motions into a single proceeding, and that proceeding is, in turn, focused on the substance of, rather than the procedural vehicle for, the attack. To reinforce that point, the rule requires the movant to direct the trial court to the "grounds" on which judgment is sought.

Suppose the plaintiff in such a case, now the appellant, forgot to address the fact of the filing of the traditional motion on appeal separately, but, pointing to the

copious evidence marshaled in response to the no evidence motion, proved that a reasonable juror could return a favorable verdict on the same challenged elements from the traditional motion? Would we face the argument that the case is over under *Malooly* for failure to address a "ground" on which judgment was sought despite the single issue? I would hope not. In that case, there would be a single issue and the argument would likewise be singular (as it is in this case): the summary judgment evidence did not support the judgment that was entered. In such a single issue, single argument summary judgment, the notion that we might seize on waiver for failure to address the procedural vehicles to decide the case irrespective of the merits, in my view, would be inappropriate. If the plaintiff's brief marshaled and put forward proof establishing the presence of a fact issue in the record in response to the no evidence motion, why would we care that he or she had not also trotted through relevant standards for *traditional* summary judgment in the three pages of briefing our eyes skip over from familiarity?

Next, take a compound summary judgment like the one originally before us in this case. The contention that the governing statute does not permit the claim *at all*—and regardless of the quality of the proof—is clearly independent of the theory that the objective weight of the evidence could not support a verdict, and either would independently support the judgment. They are thus clearly separate "grounds" under rule 166a. But are they separate "issues" on appeal as well? In other words, had the plaintiff failed to acknowledge one or the other in the briefing

on appeal would we or, perhaps, should we say, that the plaintiff's brief fails, putting aside the consequences of that failure for the moment? Because the summary judgment rule tracks issues and grounds so closely and because *Malooly* affirmatively directs it, I believe the answer is yes: we *should* raise the issue of waiver even if the defendant failed to note it.

But, isn't the question of waiver itself an "issue" that a judge should refrain from raising against the charge of activism or advocacy—this time in favor of the defendant-appellee? The answer is perhaps it is an issue, but this issue, like subject matter jurisdiction, is one we are *supposed* to raise independently in order to avoid rendering an unnecessary, and perhaps advisory, law-making decision. Facing the briefing waiver question that we *must* acknowledge, the question then turns inexorably to the next question: may or even must we allow it to be fixed where it arises *sua sponte* from us or do we become "advocates" by permitting it?

As to the "may" question, the answer under the rules seems clear: "yes" we may and, generally, we should allow the waiver to be cured. *Flakes*, 595 S.W.3d at 215; TEX. R. APP. P. 38.9(b), 44.3. Rule 38.9 authorizes us to seek supplemental briefing where necessary to permit a merits disposition and rule 44.3, together with supreme court directives on the proper interpretation of the rules, require us to liberally construe the briefs and the rules to do so. But, having discretion to ask for supplemental briefing is a far cry from a mandate to do so. Where we conduct *de novo* review, as in the summary judgment context, and the papers below demonstrate

the likely futility of further briefing, we may, for instance, say as much and simply affirm, rendering the same decision and judgment that the trial court did. TEX. R. APP. P. 42.

The motion reminds us, as we have often warned: "It is not our duty to make an independent search of the voluminous summary judgment record for evidence supporting their position." *King v. Wells Fargo Bank, N.A.*, 205 S.W.3d 731, 735 (Tex. App.—Dallas 2006, no pet.) (citations omitted). This poses the same question on appeal that the motion raises as to the trial court. If you are not *obliged* to read the record before you, does doing so amount to illicit "advocacy"?

That argument fails because there is a vast chasm between "must" and "may" when reading the record or the law as it pertains to an issue. Judges are no more potted plants as to the facts than they are to the law. If both parties appeared before us urging a result contrary to the record, whether for purposes of collusion or incompetence, would we be obliged to embrace it? Would we not then become advocates for an outcome one or both sides urge, rather than the one compelled by our standard of review? And, regardless of the answer to those questions, we are not a terminal court. What would happen in the supreme court if, represented by different counsel perhaps, a petitioner acknowledged the actual record in presenting

their arguments? Is that court constrained to ignore the actual record if it grants a petition? *See Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014).[9]

And what of the same problem with respect to the law, whether it is a controlling case that one side fails to cite or an argument that more readily forecloses the issue before us without making unnecessary new law? If the parties' briefs present only two competing legal arguments, are we obliged to pick the second least absurd and announce it as the rule for all going forward? What if the arguments and authorities cited in the briefs direct us to make not absurd, but new, unnecessary law that would likely necessitate supreme court review? Should we avoid existing law already settled by the supreme court, though the parties missed it? Again, the summary judgment context of this case illustrates the problem well.

Suppose we have a summary judgment arising out of claimed breach of a written contract. Suppose further that the parties' briefs on appeal raise a single contract enforcement issue, but present it only with exotic legal arguments as to whether the parties' course of performance has the effect of incorporating a statute that, if read as one side urges, would create additional performance obligations and, in turn, a possible claim of breach. Neither party, however, takes note of the contract's merger and modification provisions, the plain language of which, under well-settled law from a superior court, would foreclose the hybrid contract/statutory

---

[9] The parties are not limited to the arguments made below. The appellant is limited by the requirement that the "complaint" was presented adequately below. TEX. R. APP. P. 33.1. An appellee is not required to file a brief, much less preserve its ability to present arguments in support of the judgment.

construction argument altogether. If breach of the contract is the "issue," arguments over its plain language ought to be on the table. If so, treating the plain language of the contract as an unbriefed, but controlling and narrower argument and addressing it ought to be appropriate. But, does the judge searching for the narrower disposition anchored in the well-developed law and existing record become an activist? Isn't *avoiding* the obvious, narrower disposition under settled law the greater vice? Making *new* law that will apply not only to parties but also to all the world seems far more dangerous and short-sighted to me. As Justice Scalia and other ethical appellate judges have observed: "not all legal arguments bearing upon the issue in question will always be identified by counsel, and we are not precluded from supplementing the contentions of counsel through our own deliberation and research." *Regan v. Carducci*, 714 F.2d 171, 177 (D.C. Cir. 1983); *see also Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 99–100 (1991).

I agree that concerns over judicial activism are real, but that is not what was at work here. Once the parties have presented us with an issue, we are obliged to give them a merits-driven answer where we can. The parties do not sign our opinions and do not have the right to have us render a decision that is either contrary to the law that applies to their issue(s) or the record they made below, no matter how they choose to frame either. Appellate justices, no less than trial judges, have the right and perhaps the obligation to leave their chairs, read the record, and open a law book—without permission if necessary. When they do so, they should seek to avoid

issues not raised, unless compelled by law to do so, and render the narrowest merits decision possible.  *E.g.*, *Regan*, 714 F.2d at 177.  All else is confusion.


          /David J. Schenck/
          DAVID J. SCHENCK
          JUSTICE


Pedersen, III, Carlyle, Browning, J.J., join this concurring opinion.

140649CF.P05